UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Paul Santiago, | Case No. 2:21-cv-00896-APG-NJK |
| Petitioner, | **ORDER** |
| v. | |
| Calvin Johnson, et. al, | |
| Respondents. | |

## I.    INTRODUCTION

Paul Santiago, a Nevada prisoner, filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254 that is before me for a decision on the merits.  For reasons that follow, I grant the petition as to one ground for relief, deny the remaining grounds, and deny a certificate of appealability.

## II.    BACKGROUND[1]

Santiago alleges constitutional violations relating to a judgment of conviction in the Eighth Judicial District Court for Clark County, Nevada, adjudicating him guilty of two counts of attempted sexual assault.  At a preliminary hearing in January 2008, K.S., a juvenile, testified about incidents of sexual abuse that occurred three years earlier while Santiago was working at Montevista Hospital, where K.S. was a patient. ECF No. 33-1.  The justice of the peace found that testimony sufficient to require Santiago to answer to the State's charges, which consisted of two counts of sexual assault with a minor under the age of 14 and one count of lewdness with a child under the age of 14. *Id*. at 19; ECF No. 33-4.  According to a declaration prepared by a detective investigating the case, K.S., who was ten years old at the time, provided him with "a

---

[1] This summary is merely a backdrop to my consideration of the issues presented in the case.  Thus, in this section, I make no credibility findings or other factual findings with respect to the events surrounding Santiago's judgment of conviction.

clear, detailed and consistent account of the abuse that had taken place." ECF No. 33-2 at 17. K.S. described two instances of Santiago, who was a nurse, telling her that they were going to play a game involving the tasting of chocolate. *Id*. at 18.  Each time, Santiago put "patches" over K.S.'s eyes and had her kneel down in front of him. *Id*.  K.S. described the patches as the sort of item you put on your knee when it's bleeding. *Id*.

K.S. reported to the detective that, during the first incident, Santiago placed something that was "wobbly and wiggly" in her mouth that tasted "weird." *Id*.  She told the detective that during the second incident she could see through the eye coverings that Santiago had placed his penis in her mouth. *Id*. at 19.  She noted that Santiago had put what appeared to be chocolate on his penis. *Id*.  She also described Santiago cleaning himself in the bathroom sink, wiping his penis on his shirt, and getting some chocolate on the floor. *Id*.  A police inspection of the crime scene revealed what appeared to be two spots of chocolate on the bathroom floor and, in a trash bag behind the nurses' station, a partially consumed chocolate bar wrapped in foil, as well as wadded up gauze squares with a brown substance ground into them that appeared to be chocolate.[2] *Id*. at 21.

In August 2011, Santiago pleaded guilty to two counts of attempted sexual assault under *North Carolina v. Alford*, 400 U.S. 25 (1970). ECF No. 34-9.  The parties stipulated to probation with a maximum suspended sentence of 8 to 20 years on each count to run consecutive. *Id*.  At sentencing, the district court, Judge Mosley presiding, indicated that it did not intend to follow the negotiations. ECF No. 34-14 at 3.  The prosecution asked Judge Mosley to allow Santiago to withdraw his plea, which Judge Mosley allowed, and the matter was set for trial. *Id*. at 9, 11-12. The matter was subsequently reassigned to a different department (Judge Delaney) in August 2012. ECF No. 33-3 at 7.

In February 2013, just prior to the date set for trial, the parties received voluminous discovery from a related civil case involving the same victim and the same underlying events as

---

[2] Subsequent forensic testing confirmed that the substance found on the bathroom floor and on the gauze squares was chocolate. ECF No. 55-1 at 8, 25-26.

the criminal case. ECF No. 35-14 at 3-4. At the calendar call five days before the scheduled trial date, both parties requested a continuance to allow time to review the discovery material. *Id*. at 7-10. Although the parties suggested a 60-day continuance, Judge Delaney granted only a two-day continuance. *Id*. at 12-13. The parties then renegotiated the matter, and Santiago agreed to plead guilty to two counts of attempted sexual assault and to plead guilty to one count of open or gross lewdness in a separate case.[3] ECF No. 35-16. The parties again stipulated to probation with a maximum suspended sentence of 8 to 20 years on each count to run consecutive. *Id*. at 2. Two days before the trial was scheduled to begin, Santiago entered his guilty plea to the two counts. ECF No. 35-17.

At the sentencing hearing in May 2013, Judge Delaney rejected the stipulation for a suspended sentence and imposed consecutive sentences of 8 to 20 years. ECF No. 36-2. She also denied Santiago's motion to withdraw his plea and to stay the imposition of the sentence pending appeal. *Id*. The court entered a judgment of conviction in June 2013. ECF No. 12-1.

Santiago filed a notice of appeal from the judgment. ECF No. 36-7. He also filed two motions and a habeas petition in the district court attempting to have his guilty plea set aside. ECF Nos. 12-2, 36-4, 37-1. The first motion was denied for lack of jurisdiction. ECF No. 36-25. In November 2013, the district court denied the second motion and the petition. ECF No. 12-5. Santiago appealed. ECF No. 38-1.

In May 2014, the Supreme Court of Nevada affirmed the judgment of conviction, holding that the two grounds upon which Santiago appealed are not properly raised on direct appeal and, instead, "must be raised in the appeal from the district court's denial of his post-conviction motion currently pending before this court in Docket No. 64577." ECF No. 12-7 at 2. The following month, the Supreme Court of Nevada reversed and remanded the post-conviction case

---

[3] In July 2012, Santiago was charged with two counts of open or gross lewdness based on allegations that, in March 2012, he conducted inappropriate medical exams on two female patients while working as an unlicensed nurse. ECF No. 35-3 at 7-8, 26.

based on a finding that the district court erred by denying Santiago's habeas petition without appointing counsel. ECF No. 38-11.

On remand, Santiago was appointed counsel and subsequently filed a supplemental habeas petition. ECF No. 12-9. The district court held oral argument on the petition, then denied it. ECF Nos. 12-11, 56-6. Santiago appealed. ECF No. 56-8. The Nevada Court of Appeals affirmed the denial of all of Santiago's claims except one – a claim that his trial counsel, Robert Draskovich ("Draskovich"), was ineffective by failing to conduct an adequate pretrial investigation. ECF No. 12-14. The appellate court found that the lower court erred by not holding an evidentiary hearing on that claim. *Id*.

On remand, the district court concluded, after conducting an evidentiary hearing, that Santiago failed to establish that counsel performed ineffectively or that there was a reasonable probability that Santiago would have risked a trial on crimes carrying potential life sentences. ECF No. 12-16. Santiago appealed.

The Nevada Court of Appeals affirmed the denial of Santiago's petition, finding substantial evidence to support the district court's determination that Draskovich's investigation was reasonable under the circumstances. ECF No. 12-20. The court denied Santiago's petition for rehearing in July 2020. ECF Nos. 58-13, 12-21.

Santiago initiated this federal habeas corpus action in May 2021. ECF No. 6. With the assistance of appointed counsel, he filed a "protective" first amended petition in August 2021. ECF No. 11. In July 2022, he filed a second amended petition. ECF No.27. Respondents filed a motion to dismiss the second amended petition (ECF No. 67), which I granted, in part, dismissing Ground 1. ECF Nos. 77/79. I also found that Ground 3(A) is procedurally defaulted, but I reserved judgment on whether the default should be excused until I reached the merits of Santiago's petition. *Id*. The parties' briefing of the remaining claims on the merits, as well as the procedural default of Ground 3(A), concluded in July 2024. ECF Nos. 83/91.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). The standard of review under AEDPA is set forth at 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Emil v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a ''highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong

case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

If the state court's adjudication on the merits of a claim is not entitled to deference under § 2254(d), the federal court conducts a de novo review of the claim. *Kernan v. Hinjosa*, 578 U.S. 412, 413 (2016). Similarly, the federal court reviews a claim de novo if the state courts never reached the merits of the claim. *Pirtle v. Morgan*, 313 F.3d 1160, 1167–68 (9th Cir. 2002). Because de novo is more favorable to the petitioner, federal courts can deny writs of habeas corpus brought under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## IV.    DISCUSSION

Santiagos's remaining claims allege that his custody violates his constitutional rights because he was deprived of effective assistance of trial counsel in his state court criminal proceedings. To establish a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id*. at 687-88. Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. If the conviction was the result of a guilty plea, a petitioner shows prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The reviewing court need not consider the performance component before the prejudice component "or even address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697.

## A.    Ground 2(A-B)

In Ground 2(A), Santiago alleges he was provided ineffective assistance of counsel due to his trial counsel's failure "to timely monitor and obtain discovery from the parallel civil case." ECF No. 27 at 23-40. In November 2007, just after the State initiated criminal proceedings against Santiago, K.S. (through a guardian ad litem) filed a civil suit against Santiago. ECF No. 28-1. According to Santiago, Draskovich failed to avail himself of substantial exculpatory evidence contained within the discovery materials in that case. In Ground 2(B), Santiago alleges trial counsel was ineffective for not obtaining an independent medical evaluation (IME) of the victim, K.S, to document her mental health issues. ECF No. 27 at 40-45. Santiago contends that, as a result of these two deficiencies, Draskovich was unable to competently advise him about entering his guilty plea and that, but for the deficiencies, he would have insisted on going to trial.

Among the discovery materials Santiago cites as favorable to his defense are the following. In January 2009, the defendants took the depositions of K.S., K.S.'s grandfather, and his common-law wife. K.S. provided an account of Santiago's sexual abuse that differed significantly from the account she gave to the detective investigating the case. ECF No. 53-1 at 157-228. She also testified that she saw Mr. Santiago washing his penis through the space between the door jamb and the bathroom door despite evidence that a hinge extended the entire length of the doorframe. *Id*. at 167; ECF No. 55-1 at 158-63. The depositions of K.S.'s

grandfather and his common-law wife both cast doubt on K.S.'s credibility. ECF No. 54-1 at 5-76. At a hearing in March 2012, the discovery commissioner in the civil case found that K.S. was "adept at manipulation, changing her story to suit her needs" and that "there were many instances where she outright lied to case workers and other people." ECF No. 28-3 at 3-4.

In June 2012, the parties to the civil case filed a notice indicating that they had also taken the depositions of various employees of Montevista hospital and officers with the Las Vegas Metropolitan Police Department (LVMPD). ECF No. 28-6. Susan Hubbard, an employee of Montevista hospital who participated in an internal investigation of K.S.'s allegations against Santiago, testified in her deposition that she, along with the head of human resources and the director of nurses, concluded that Santiago was not guilty. ECF No. 51-1 at 16. Attached to her deposition are hand-written statements from several employees indicating that they were working with Santiago at the time of the alleged incident and did not see him interact with K.S. ECF No. 52-1 at 35-36, 46, 51, 55. Another employee reported that K.S. told her that she (K.S.) lied about the incident and said that she got the idea from older girls at school. *Id*. at 43. Timothy Moniot, the LVMPD detective who interviewed K.S., testified that he never reviewed K.S.'s records documenting a history of problems with honesty and making false allegations. ECF No. 152-1 at 115-16. Moniot also testified that, due his caseload and delays obtaining DNA results, he did not prepare his declaration about the incident until three years after receiving the initial report. *Id*. at 106. Scott Hardy, a forensic scientist for LVMPD, testified that the two spots of chocolate found on the bathroom floor were the same chocolate, but differed from the chocolate in the foil and the chocolate on the gauze, which were also different than each other. ECF No. 55-1 at 8, 25-26. Lori Crickett, a sergeant with LVMPD who was present during Moniot's initial interview with K.S. and subsequently retrieved items of clothing from Santiago's home, testified about various missteps in the investigation of K.S.'s case. ECF No. 55-1 at 29-58.

Among the documents in the voluminous discovery that counsel received in mid-February 2013 (described by Draskovich as "over three banker's boxes of information" (ECF No. 35-14 at 11)) were an IME of K.S. completed in June 2012 and records from Clark County

Family Services (CCFS). The IME, conducted by Dr. Anlee Kuo, indicates that K.S. was exposed to sexual behavior frequently at a young age and that K.S.'s grandmother had told K.S. that K.S.'s mother used to let men have their way with K.S. and her sister in exchange for methamphetamine. ECF No. 55-1 at 176-82. The CCFS records showed that K.S. had a history of making sexual remarks and suggestive sexual behavior. ECF No. 41-1 at 50, 56; ECF No. 42-1 at 96-97. They also document at least three instances of K.S. falsely accusing Montevista staff members of physical abuse. ECF No. 41-1 at 46-47, 138-39, 157.

With respect to counsel's failure to obtain an IME, Draskovich filed a motion in the trial court in August 2009 claiming that an IME was required due to the absence of any corroborating evidence supporting K.S.'s allegations and reasons to believe that K.S.'s mental or emotional state caused her to lie about the incidents involving Santiago. ECF No. 33-13. Even though the trial court granted the motion for an IME in March 2010 (ECF No. 24-2 at 13; ECF No. 34-5), counsel never had the evaluation done. In addition to the IME prepared by Dr. Kuo, Santiago cites a psychiatric evaluation completed by Dr. Norton Roitman in October 220. ECF No. 42-1 at 180-81. Dr. Roitman noted that K.S. had "severe behavioral difficulties combined with disturbances in her domestic growth environments" and described her as "an under-civilized individual who is without adequate conscience or self regulation." *Id.* at 180.

Santiago presented Ground 2(A) and 2(B) to the Supreme Court of Nevada as a unified claim, that being a claim that his counsel was ineffective by failing to conduct an adequate pretrial investigation. ECF No. 56-22 at 42-47.[4] As noted, the Nevada Court of Appeals determined that the lower court erred by not holding an evidentiary hearing on that claim and remanded the case to remedy that error. ECF No. 12-14. In reaching that decision, the court held as follows:

> During a hearing five days before trial was scheduled to begin, defense counsel informed the district court that he had recently received evidence stemming from a civil lawsuit regarding this matter. Counsel asserted he had

---

[4] After briefing, the Supreme Court of Nevada transferred the case to the Court of Appeals for decision under NRAP 17(b).

requested evidence obtained during the civil case approximately one year previously, but the attorneys involved in the civil matter had only recently provided that evidence to him. Counsel stated he had been prepared for trial to begin as scheduled prior to the disclosure of this evidence, however he needed additional time to review the new evidence. Given the late disclosure of this information, defense counsel and the State requested a lengthy continuance of the trial. Of note, counsel informed the district court that he could have been more diligent in obtaining these records and stated "[t]hese are civil records that I was unaware of." Counsel further warned he was concerned he would provide ineffective assistance of counsel if forced to proceed to trial as scheduled due to the voluminous nature of the recently obtained evidence. The district court decided to delay the start of trial only two additional days, concluding that a total of seven days was sufficient for the parties to review the new evidence and be properly prepared for trial. Five days later, Santiago accepted a plea offer and entered a guilty plea to two counts of attempted sexual assault.

The district court did not conduct an evidentiary hearing regarding this claim. Rather, the district court's order states its conclusion that Santiago's defense conducted a thorough investigation and discussed counsel's investigation regarding additional evidence. The district court denied this claim on this basis. This was error, as the investigation referenced in the district court's order did not encompass the entirety of the evidence at issue in this claim, particularly in light of counsel's acknowledgment that he was unaware of this new evidence. Further, the record does not reveal the extent of defense counsel's investigation, why counsel had to rely upon the civil attorneys' disclosures to receive this information, or why counsel could not have discovered this evidence at an earlier time through his own independent investigation.

We note "defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *State v. Love*, 109 Nev. 1136, 1138, 865 P.2d 322, 323 (1993) (internal quotation marks omitted). Given counsel's duty, Santiago's claim that his defense counsel failed to properly investigate so as to discover this evidence is a claim that was supported by specific factual allegations that are not belied by the record and, if true, would entitle him to relief. *See Hargrove* [*v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984)].

Therefore the district court must conduct an evidentiary hearing to ascertain the scope of defense counsel's pretrial investigation whether counsel could have reasonably obtained this evidence through independent investigation and whether he performed reasonably diligent actions to obtain this information from the civil attorneys.[3] Further the district court must also consider in light of the evidence and testimony received at the evidentiary hearing regarding counsel's investigation whether Santiago demonstrates a reasonable probability he would have refused to plead guilty and would have insisted on going to trial.[4]

---

[3] To the extent Santiago raised a separate claim that he should be permitted to withdraw his guilty plea because it was unknowingly entered due to a failure to review newly discovered evidence, the district court should consider whether the evidence produced at the evidentiary hearing

demonstrates withdraw [sic] of Santiago's guilty plea is necessary to correct a manifest injustice. *See* NRS 176 165; *State v Freese*, 116 Nev 1097, 1105, 13 P.3d 442, 448 (2000).

⁴ We note Santiago was initially charged with two counts of sexual assault of a minor under the age of 14 and one count of lewdness with a child under 14 years of age. We further note Santiago also agreed to plead guilty to open or gross lewdness in a separate criminal case as part of the plea agreement, but the record before this court does not contain information regarding the scope of the plea negotiations for that separate case. The penalties Santiago faced in both cases had he rejected the plea offer should be considered when the district court decides whether Santiago demonstrates prejudice stemming from this claim.

ECF No. 12-14 at 4-6.

The state district court held an evidentiary hearing and denied relief. In ruling on Santiago's appeal of that denial, the Nevada Court of Appeals decided the claim as follows:

Santiago argued his counsel was ineffective for failing to conduct an independent investigation so as to discover important impeachment and exculpatory evidence at an earlier time. Santiago asserted that, as a result of counsel's failure to conduct a proper investigation, he was not able to enter a knowing guilty plea because counsel was not prepared for trial and he could not properly evaluate the evidence that would have been produced at trial.

The district court conducted an evidentiary hearing concerning this issue and Santiago's counsel testified at the hearing. Counsel testified he and his investigator performed their own investigation, but also obtained information and evidence from the attorneys working on the civil litigation concerning the sexual abuse allegations involving Santiago. Counsel testified he had a cordial relationship with those attorneys and he believed it was most effective to obtain evidence through them because they had greater access to information through civil discovery than he did. Counsel testified that he received a substantial amount of evidence from the civil attorneys shortly before the scheduled trial date. Counsel testified that he disclosed that evidence to the State and the State offered a plea deal that he believed was very favorable to Santiago. Counsel testified he explained to Santiago that he had not been able to review all of the evidence, but he felt it was in Santiago's best interest to accept the State's plea offer given the substantial penalties Santiago faced if Santiago were to be convicted at trial. Counsel testified that after their discussion of the evidence and the State's plea offer, Santiago decided to accept the State's offer and enter a guilty plea.

After the evidentiary hearing, the district court found counsel's investigation was reasonable under the circumstances of this case. Substantial evidence supports the district court's finding. *See State v. Love*, 109 Nev. 1136, 1138, 865 P.2d 322, 323 (1993) ("[D]efense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (internal quotation marks omitted)). The district court further found that Santiago faced life in prison had he been convicted at trial and the plea offer gave Santiago the chance to receive probation. In light of the

1
2
3
4
5
6
7
8

substantial reduction in possible penalties Santiago faced by accepting the State's plea offer, the district court found Santiago did not demonstrate a reasonable probability he would have refused to plead guilty and would have insisted on proceeding to trial had counsel conducted investigation in a different manner. Substantial evidence supports the district court's finding.  Therefore we conclude the district court did not err by denying this claim.[1]

_____

[1] Santiago also argued that he should be permitted to withdraw his guilty plea because it was unknowingly entered due to counsel's failure to investigate and discover evidence. In light of the district court's findings regarding counsel's investigations and Santiago's decision to accept the plea offer, Santiago failed to demonstrate withdrawal of the plea was necessary to correct a manifest injustice. *See* NRS 176 165.

ECF No. 12-20 at 3-5.

Based on my review of the record, I am not convinced that the state court decision was

contrary to, or an unreasonable application of, clearly established federal law, or that it was

based on an unreasonable determination of the facts in light of the evidence presented in state

court.  As a starting point, I note that both Draskovich and the prosecutor were aware of most of

the problems with the State's case against Santiago notwithstanding Draskovich's alleged failure

to monitor and obtain discovery materials in the civil case.  At Santiago's preliminary hearing,

Draskovich had K.S. admit that she had a history of lying that included falsely accusing a teacher

of pushing her and that, soon after her initial police interview, she began telling people that the

incident between her and Santiago did not happen. ECF No. 33-1 at 9-10; 16.  Draskovich also

pointed out that there was evidence that a female nurse would have been checking on K.S. every

fifteen minutes during the time of the alleged incidents and that the solid hinge would have

prevented K.S. from seeing Santiago through a gap between the door and the door jamb. *Id*. at

22.  At the aborted sentencing hearing, the prosecutor explained to Judge Mosley that Santiago

had been offered such a favorable deal because the DNA evidence against Santiago was not as

strong as the presentence investigation report (PSI) suggested. ECF No. 34-14 at 4-5.  The

prosecutor also noted that "the victim herself has issues" and that "[t]here are reasons she's in

Monte Vista to begin with." *Id*. at 5.  At the same hearing, Draskovich told Judge Mosley that he

had learned from the civil case that K.S. had told several people that she was going to accuse

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Santiago of misconduct in an effort to get him fired and to get herself out of Montevista and that she had also accused two other people at Montevista of sexual misconduct. *Id*. at 6-7. Draskovich also mentioned that there could be two instances of K.S. falsely accusing people of misconduct outside of Montevista. *Id*.

While all this exculpatory evidence suggests that Draskovich should have advised Santiago to take the case to trial, several factors weighed in favor Santiago accepting the State's plea offer. For one, there was significant evidence that Santiago was guilty of at least one, if not both, of the charges against him. Judge Mosley noted in reference to K.S. that "[t]his little ten-year-old is a genius" if Santiago was not guilty, given the level of detail included in her initial interview with the police and the evidence corroborating her account. *Id*. at 9-11. Santiago fails to account for the police finding gauze squares smudged with chocolate in the trash behind the nurse's station. When interviewed by the police, Santiago admitted that he had lied to them about not changing his clothes after learning about the allegations and that, in fact, he went home, told his wife about it, changed his clothing into his pajamas and robe, and left his work clothes on his bedroom floor. ECF No. 33 at 23-24. Santiago told the police that his work clothes should still be where he left them, but the police found them in a washing machine with very few other items of clothing, still wet and with a strong odor of detergent. *Id*. at 24-25; ECF No. 55-1 at 33, 44. While Santiago offers innocent explanations for what he told the police, his conduct and apparent deception were nonetheless incriminating.

Another factor weighing against going to trial was the uncertainty of obtaining an acquittal notwithstanding the apparent strength of the impeachment evidence available to Draskovich. According to his testimony at the evidentiary hearing on remand, Draskovich had handled thousands of sexual assault cases and that he stopped keeping track at one hundred with respect to how many of those cases went to trial. ECF No. 82-1 at 78-79. He testified that the uncertainty of the outcome and the severity of the penalties in sexual assault cases made them more dangerous to take to trial than other types of cases and that a jury's assessment of impeachment evidence in a sexual assault case can differ from a defense attorney's assessment,

especially if jurors feel that the defense attorney is being disrespectful of the victim. *Id.* at 79-80, 87.

Draskovich also had to consider that Santiago had a previous felony conviction for assault to commit rape and that he had been arrested on the gross lewdness charges while his criminal case involving K.S. was pending. ECF No. 35-3 at 7-8, 26; ECF No. 60-1 at 5. Draskovich did not know when advising Santiago whether to accept the plea agreement that Judge Delaney would reject the parties' agreed upon sentence and not permit Santiago to withdraw his guilty plea. While Draskovich may have been able to keep the prior felony conviction from being presented to a jury at trial, it would likely have been a factor in the court's sentencing decision if the jury returned a guilty verdict.

Given these circumstances, I am unable to conclude that the Nevada Court of Appeals applied the *Strickland/Hill* standard unreasonably in denying relief. There is evidence in the record that Draskovich should have been more diligent in monitoring the discovery in the civil case. *See* ECF No. 35-14 at 10-11. As discussed above, however, the record also supports a finding that Draskovich had discovered, or was aware of, the most significant weaknesses in the State's case against his client. According to his testimony at the state court evidentiary hearing, Draskovich was receiving "a lot of information from the civil side," including K.S.'s first deposition, which he used to support his motion for an IME. ECF No. 82-1 at 37, 49. Despite that, Draskovich told Judge Delaney at the calendar call that the civil attorneys were not willing to disclose the voluminous discovery in the banker's boxes until February 14, 2013, just a week prior to the date set for trial. ECF No. 35-14 at 11. Draskovich also testified about obstacles that stood in the way of him obtaining the information independently, which included staff at Montevista not cooperating with his investigator and not being permitted to speak directly to the alleged victim or several witnesses because they were represented by counsel. ECF No. 82-1 at 49, 55-56. He also testified that CCFS records are not available without a court order and that the court typically refuses to issue such an order without a showing that the records are exculpatory. *Id*. at 84.

With respect to Draskovich's failure to obtain an IME of the victim, the record indicates that, soon after the trial court granted Draskovich's motion for an IME, the parties agreed upon a doctor to conduct the evaluation. ECF No. 34-2 at 16. However, the parties litigated the parameters of the evaluation up until Santiago entered his guilty plea before Judge Mosley in August 2011. *Id*. at 16-26. With the case apparently resolved, the issue was taken off the table until January 2012, when Judge Mosley indicated that he was not going to accept the parties' plea agreement. ECF No. 34-14 at 5-6. Judge Mosley instructed the parties to try to agree on a doctor for the IME and set a trial date for June 2012. *Id*. at 13-14. At the calendar call in June, the parties informed the court that they were not ready for trial and that the IME still needed to be conducted. ECF No. 34-2 at 30. With the new charges against Santiago arising around that time, the parties spent the following months litigating custody, bail, and indigency issues, with no further mention of the IME in the trial court's minutes for hearings that took place between June 2012 and Santiago's guilty plea in February 2013. *Id*. at 30-43.

In sum, Draskovich's performance may have been lacking in some respects, but the state court's decision that it did not fall below an objective standard of reasonableness is worthy of deference under § 2254(d) – i.e., fairminded jurists could disagree on the correctness of the decision. The state court's decision regarding lack of prejudice is even more reasonable. If found guilty of even one of the two counts of sexual assault with a minor under the age of 14, Santiago faced a sentence of life in prison with a mandatory minimum term of 20 years. *See* Nev. Rev. Stat. § 200.366 (2003). While the State's case against him was fraught with weaknesses, the stakes for Santiago were high, and the outcome of a trial was far from predictable. He cannot make a plausible argument that, but for counsel's allegedly deficient performance, he would have risked going to trial instead of agreeing to plead guilty to lesser charges with a stipulated sentence of probation. There was nothing earth-shattering in any discovery material that Draskovich failed to monitor or review as compared to the information he already possessed when advising Santiago. Likewise, there is not a reasonable probability that an IME of the

alleged victim would have produced information sufficient to change Santiago's mind about pleading guilty. Thus, I must defer to the state court's decision and deny relief.

**B.    Ground 2(C)**

In Ground 2(C), Santiago alleges he was provided ineffective assistance of counsel because his counsel failed to ensure that the new plea was conditional and misinformed Santiago that he could obtain a new judge. ECF No. 27 at 45-47. Santiago alleges that Draskovich told him that his guilty plea could be withdrawn if Judge Delaney did not accept the parties' recommended sentence, which was reinforced by Santiago's prior experience with Judge Mosley. He also claims that Draskovich also told him that could appear before a different judge if Judge Delaney rejected the parties' stipulated sentence.

Santiago presented Ground 2(C) to the Supreme Court of Nevada in his state post-conviction proceeding, but not as a single claim. In his initial opening brief, Santiago argued he received ineffective assistance of counsel because his counsel failed "to make sure that Santiago understood all the ramifications of his plea," because counsel "never advised Santiago that should the court decide not to abide by the stipulated plea, Santiago would not be allowed to withdraw his plea as he had been permitted to do before Judge Mosley." ECF No. 56-22 at 38. The court concluded this argument was without merit because the guilty plea agreement, the trial court's plea canvass, and Santiago's counsel all put him on notice that the trial court was permitted to deviate from the stipulated sentence and impose any sentence authorized by statute. ECF No. 12-14 at 6-7. Santiago also presented arguments counsel was ineffective because counsel (1) failed to make Santiago's plea a conditional plea (ECF No. 56-22 at 51-55) and (2) misrepresented counsel's ability to secure a new judge if the court refused to accept the parties' stipulation to probation (*Id*. at 63-64). Citing Nev. Rev. Stat. § 174.035(3), the court rejected the first argument because Santiago "did not allege that counsel could have persuaded both the court and the district attorney to consent to a conditional plea." ECF No. 12-14 at 7. With regard the second argument, the court concluded that Santiago "fail[ed] to demonstrate a reasonable probability that he would have refused to plead guilty and would have insisted on

going to trial, particularly in light of the charges he faced had he rejected the State's plea offer." *Id*. at 9.

In my view, the Nevada Court of Appeals missed the point of Santiago's argument by focusing on the fact that he had been put on notice that the trial court was not obligated to accept the sentence stipulated in the guilty plea agreement. Undoubtedly, Santiago had been warned that the trial court was not bound by the parties' stipulation. Indeed, his experience before Judge Mosley should have made that clear to him. The point of Santiago's argument, however, was not that he was led to believe that his sentence was guaranteed by the guilty plea agreement. Instead, the thrust of his argument was that counsel failed to warn him that, unlike what occurred before Judge Mosley, he might not be able to withdraw his guilty plea if the trial court rejected the agreed upon sentence.

The Nevada Court of Appeals also incorrectly addressed Santiago's argument that counsel was ineffective for not making his guilty plea a conditional plea. The crux of Santiago's argument was that Draskovich failed to recognize that, without a provision that the guilty plea was conditional, Santiago would not necessarily be able to withdraw the plea if the trial court did not accept the stipulated sentence. ECF No. 56-22 at 51-55. The Nevada Court of Appeals was correct in concluding that there was not a reasonable probability that counsel could have persuaded the court to consent to a conditional plea, but that was beside the point. If Draskovich had ensured that the plea was a conditional plea, Santiago would have had the option of proceeding to trial when the court refused to accept the stipulated sentence. Thus, the correct prejudice inquiry was whether there was reasonable probability Santiago would have insisted on going to trial on the original charges rather than allow the court to sentence him on the lesser charges.[5]

---

[5] I also note that the Nevada Court of Appeals' reliance on Nev. Rev. Stat. § 174.035(3) was misplaced. That provision allows a defendant pleading guilty to reserve in writing the right to appeal an adverse determination on a specified pretrial motion, provided he or she has the consent of the district court and the State. Thus, it did not apply to Santiago's case.

1    In sum, the Nevada Court of Appeals unreasonably applied *Strickland*/*Hill* to the facts of

2    Santiago's case. Because the state court's adjudication on the merits of Ground 2(c) is not

3    entitled to deference under § 2254(d), I must conduct a de novo review of the claim. *See Hinjosa*,

4    578 U.S. at 413.

5    At the evidentiary hearing on remand, Draskovich testified about a jail visit with Santiago

6    after the calendar call but prior to Santiago entering his guilty plea. Draskovich testified as

7    follows about what he told Santiago:

8    Q.    Was there discussion as what would happen if Judge Delaney did
         not go along with the negotiations?
9

10   A.    Yes.

11   Q.    What was the discussion?

12   A.    I told him it was a stipulated plea. It was basically binding that he
         would receive probation.

13   Q.    And if the judge did not agree with that plea?

14   A.    He should be allowed to withdraw his plea and proceed to trial.

15   Q.    From your discussion, did that appear to be an area that troubled
         him?
16

17   A.    He was concerned. He – like I said, I'm not going to get into
         privileged information unnecessarily. He maintained his
         innocence through the entire time I represented him concerning
18        these charges.

19   Q.    He had concerns about entering a guilty plea?

20   A.    He did. I remember telling him he was not going to run for
         president. He had a previous felony sex conviction. Basically, to
21        get in and out of this case to avoid a substantial sentence would be
         in his best interest.
22

23   Q.    And that would be the basis for the stipulated probation?

     A.    Correct.
24

25   Q.    Did you have any discussions with him about his pleas would
         allow him to go home?

26   A.    Yes. I am sure I did. I'm sure I told him he would get out. His
27        pretrial release had been revoked. I told him in the event he

28

1    entered into this plea, it's a stipulated plea for probation, he'd be
     going home.

2    Q.    Going home to his wife?

3    A.    Correct.

4    Q.    Was there reluctance on Mr. Santiago's part in accepting this plea,
           given what happened in front of Judge Mosley?

5

6    A.    There was.

7    Q.    He was concerned by that?

8    A.    He was.

9    Q.    How did you allay those concerns for him?

10   A.    I told him it was a stipulated plea.  He was going to get probation
           or we'd ultimately go to trial.  I informed him there was always
           risks inherent in going to trial and then obviously if we can
11         negotiate an outcome that's generally in his best interest.

12   Q.    But specifically you indicated that if the court did not go along
           with stipulated probation he'd be allowed to withdraw his plea?

13

14   A.    I'm sure I told him that.  Up until that point that had been the
           practice.  If a stipulation was not accepted he was allowed to
           withdraw his plea.

15

16   Q.    Do you recall any discussion about if the court did not go along
           with the negotiated plea, he would be able to obtain a different
           department, different judge to hear the case?

17

18   A.    That I don't have a recollection of that.  I know there was a
           discussion following his sentencing concerning seeking a different
           department.  I don't recall that discussion prior to entering his plea
19         or sentencing.

20   Q.    Would it be fair to say you informed him he'd be allowed to
           withdraw his plea if the court did not go along with the stipulated
21         probation factored into his decision to accept the plea?

22   A.    Yes.

23   Q.    You don't have any doubt about that?

24   A.    I have no doubt I would have told him something to that effect.

25   Q.    To your knowledge would he have any reason not to trust you on
           that issue?

26

27   A.    I never misled him before, so he and I had no communication
           problems at that point.

28

1   ECF No. 82-1 at 17-20.

2       Respondents concede that Draskovich "advised Santiago that he would be permitted to

3   withdraw his plea if Santiago did not receive probation," but argue that Draskovich did not

4   perform below the *Strickland* standard because "[he] believed, based on extensive experience

5   handling thousands of criminal cases over nearly two decades, that the stipulated sentence bound

6   the court." ECF No. 83 at 20.  They cite Draskovich's testimony that he "never had a judge vary

7   a sentence on a stipulated plea until Mr. Santiago" and that prior to that "it was [his]

8   understanding … that a stipulated sentence basically was a stipulation the person receiving the

9   sentence shall receive what the parties stipulated to." *Id.* (citing ECF No. 82-1 at 95).

10      Under the former Nev. Rev. Stat. § 174.065(3), a defendant in Nevada had a statutory

11  right to withdraw a guilty plea when the court rejected a sentencing recommendation in a plea

12  agreement. *See Stahl v. State*, 851 P.2d 436, 438 (Nev. 1993); *Lovie v. State*, 835 P.2d 20, 21

13  (Nev. 1992).  That provision was repealed in 1993. 1993 Nev. Stat., ch. 279, § 1, at 828-29.  The

14  Supreme Court of Nevada later held that "when a judge does express an inclination to follow the

15  parties' sentencing recommendation, the defendant must be given an opportunity to withdraw the

16  plea if the judge later reconsiders and concludes that a harsher sentence is warranted." *Cripps v.*

17  *State*, 137 P.3d 1187, 1191–92 (2006).  Otherwise, after 1993, a defendant was entitled to

18  withdraw a guilty plea upon the court's rejection of a stipulated sentence only if the terms of the

19  guilty plea agreement so provided.

20      Thus, the question is whether it was reasonable for Draskovich to rely on his substantial

21  past experience with guilty plea agreements when, at the time Santiago entered his guilty plea,

22  Nevada law did not mandate the withdrawal of a guilty plea when the court refused to follow the

23  recommendation in a plea agreement, *unless* the trial court had expressed an inclination to accept

24  the recommendation or the parties had entered into a plea agreement conditioned on the court

25  accepting the recommendation.  There is case law indicating that an attorney's experience plays

26  a role in evaluating his strategic choices. *See*, *e.g.*, *Chandler v. United States*, 218 F.3d 1305,

27  1316 (11th Cir. 2000) ("When courts are examining the performance of an experienced trial

28

counsel, the presumption that his conduct was reasonable is even stronger." (citing *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir.1998)).  Indeed, *Strickland* itself suggests as much. *See Strickland*, 466 U.S. at 699 (counsel's decision to not investigate additional mitigating evidence at capital sentencing hearing did not constitute deficient performance in part because it was a strategic decision based on "the trial judge's views" which were "well known to counsel.").  Here, however, the alleged error was not a strategic decision, but instead a fundamental misunderstanding of the law.  Judge Mosley put Draskovich on notice that the court could balk at a suspended sentence with Santiago receiving probation.[6]  Competent counsel would have prepared for the consequences of that happening by conditioning Santiago's plea on the district court's imposition of the stipulated sentence.  Draskovich provided ineffective assistance of counsel by advising Santiago that he would be permitted to withdraw his guilty plea if Judge Delaney rejected the stipulated sentence but failing to provide for that possibility in the guilty plea agreement.

There is a reasonable probability that, had counsel properly advised Santiago about his ability to withdraw his plea, Santiago would have chosen to go to trial on the original charges rather than allow the court to sentence him on the lesser charges.  Draskovich testified that Santiago had "maintained his innocence through the entire time I represented him concerning these charges." ECF No. 82-1 at 18.  The State's willingness to stipulate to a suspended sentence with probation is a clear indication of the weakness of its case against him.  Santiago was 61 years old when pleaded guilty. ECF No. 60-1 at 3.  As Draskovich confirmed in his testimony, Santiago exposing himself to two 8 to 20 year sentences was "not such a good deal for a man of his age." ECF No. 82-1 at 88-89.  Given these circumstances, Santiago has satisfied the *Strickland/Hill* prejudice standard because there is ample reason to conclude that he would not have entered his guilty plea if Draskovich had not misled him about his about his ability to

---

[6] After explaining his reasons for rejecting the plea agreement, Judge Mosley stated: "I want the transcript of what I have indicated here, Ms. Court Reporter, so that the Judge that takes over this case will have the benefit of my view; not that it's dispositive of the issue, but it's worthy of some comment, I think."  ECF No. 34-14 at 10.

withdraw the plea if the court chose not to impose the stipulated sentence. *See Strickland*, 466

U.S. at 693-94 (holding that a "reasonable probability" is "a probability sufficient to undermine

confidence in the outcome," not a probability that it is "more likely than not" the result would be

different). Thus, Santiago is entitled to habeas relief on Ground 2(C). [7]

### C.    Ground 2(D)

In Ground 2(D), Santiago alleges he was provided ineffective assistance of counsel

because his counsel failed to tell him the new plea was not an *Alford* plea and/or failed to arrange

an *Alford* plea. ECF No. 27 at 47-49.  Santiago notes that his plea before Judge Mosley was an

*Alford* plea. ECF No. 34-10 at 4-5.  He alleges that Draskovich believed the second plea was also

an *Alford* plea, but it was not. ECF No. 35-16.  He points to the sentencing memorandum

Draskovich prepared after the second plea in which Draskovich stated that "Paul Santiago has

continued to maintain his innocence on these charges but has resolved these accusations through

an *Alford* plea." ECF No. 36-1 at 4.  He claims he "was prejudiced because he never would have

entered a guilty plea instead of an *Alford* plea if properly advised [because] [h]e was potentially

on the hook for thousands of dollars in the parallel civil case." ECF No. 27 at 49.

The Nevada Court of Appeals decided this claim:

> Santiago argued his counsel was ineffective for failing to ensure Santiago
> entered an *Alford* plea.  Santiago failed to demonstrate his counsel's performance
> was deficient or resulting prejudice.  Because an *Alford* plea is equivalent to a
> guilty plea insofar as how the court treats a defendant, *State v. Lewis*, 124 Nev.
> 132, 134 n.1, 178 P.3d 146, 147 n.1 (2008), Santiago did not demonstrate that
> failure to ensure the plea was entered pursuant to *Alford* was objectively
> unreasonable or that any such failure altered the outcome of the proceedings.
> Therefore, the district court did not err in denying this claim without conducting
> an evidentiary hearing.

ECF No. 12-14 at 7-8.

---

[7] Having determined that Santiago is entitled to relief based on counsel's erroneous advice and failure to
ensure that Santiago's plea was conditioned on the court accepting the stipulated sentence, there is no reason
to analyze Santiago's additional allegation that counsel was ineffective for misrepresenting his ability to
have Santiago's case transferred to a different judge.

The record demonstrates that Draskovich mistakenly believed that Santiago had entered an *Alford* plea before Judge Delaney. While this oversight shows that Draskovich may not have reviewed the guilty plea agreement as closely as he should have, I am not convinced that his error placed his performance below an objective standard of reasonableness. More to the point, Santiago has not established that Nevada Court of Appeals' ruling about prejudice was based on an unreasonable application of *Strickland*/*Hill* or based on an unreasonable determination of the facts. Avoiding exposure to civil liability may have been a factor that impacted Santiago's decision to enter what he thought was an *Alford* plea, but it would have been an insignificant consideration compared to the deal he was being offered. That is, there is not a reasonable probability that he would have rejected the plea agreement if had been advised that he was not entering an *Alford* plea. Thus, I defer to the state court's decision to deny relief on this claim.

### D.    Ground 2(E)

In Ground 2(E), Santiago alleges he is entitled to habeas relief due to the cumulative impact of counsel's errors, as alleged in Ground 2. As discussed above, Santiago is entitled to relief under Ground 2(C). But Santiago has failed to establish a reasonable probability that the remaining alleged errors in Ground 2, even when considered cumulatively, impacted his decision to enter a guilty plea.

### E.    Ground 3(A)

In Ground 3(A), Santiago alleges that was he provided ineffective assistance of counsel because his counsel failed to present exculpatory evidence from the civil discovery to Judge Delaney at sentencing. ECF No. 27 at 50-52. According to Santiago, effective counsel would have been prepared to present the exculpatory evidence to demonstrate that the negotiated sentence was fair, especially after what had occurred before Judge Mosley. He claims that, had counsel presented the evidence, "there is a reasonable probability that the judge would have imposed either the agreed-upon sentence or a lower sentence than 16 to 40 years." *Id*. at 52.

As noted above, Ground 3(A) is procedurally defaulted. Still in dispute is whether Santiago can overcome the procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012). ECF

No. 77 at 8.  Under *Martinez*, a habeas petitioner can demonstrate cause to overcome the procedural default of a claim of ineffective assistance of trial counsel by demonstrating that either (a) he had no counsel during the state postconviction proceedings or (b) such counsel was ineffective. *Martinez*, 566 U.S. at 14.  He must also demonstrate that the defaulted claim of ineffective assistance of trial counsel is a "substantial" claim. *Id*.  A claim is "substantial" for purposes of *Martinez* if it has "some merit," which refers to a claim that would warrant issuance of a certificate of appealability. *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019).  This standard does not require a showing that the claim will succeed, but instead only that its proper disposition could be debated among reasonable jurists. *See generally Miller-El v. Cockrell*, 537 US. 322, 336–38 (2003).  The determination of whether a petitioner can demonstrate prejudice under *Martinez* is made de novo. *See Ramirez*, 937 F.3d at 1243–44.  If he can, the claim is then reviewed de novo on the merits. *See Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

The transcript of the sentencing hearing makes it clear that Judge Delaney was aware of the State's "proof problems," but determined that several other factors weighed in favor of imposing the maximum sentence available under the guilty plea agreement. ECF No. 36-2 at 5-8. She first noted that the evaluator who prepared a psychosexual report on Santiago placed him at "a moderate risk to sexually re-offend and a moderate risk to criminally re-offend." *Id*. at 6-7. She then cited the victim's written statement in which the victim asked that her absence from the hearing be excused because "[she] never want[ed] to see this sick individual again" and stated that "[i]t was entirely unfair that he could ruin her life and go on living his life like nothing had happened if he were given probation." *Id*. at 7.  Judge Delaney concluded by saying:

> I have looked at the entirety of the circumstances of this case and I have certainly looked at the PSI, and with understanding what the State has indicated in terms of what the proof problems may have been, we still nevertheless have a recommendation based on a history of sex offense by this individual and the PSI recommends a maximum sentence and consecutive, and I wholeheartedly agree with what the PSI says.

*Id*. at 7-8.

Under the circumstances, I am unable to conclude that Santiago's state post-conviction counsel performed ineffectively by not advancing a claim that trial counsel's failure to present exculpatory evidence at sentencing constituted ineffective assistance of counsel. Such a claim had little chance of success. State post-conviction counsel's supplemental petition, which was over 80 pages long, contained several ineffective assistance of trial counsel claims that were stronger. *See* ECF No. 12-9. And, counsel effectively litigated the strongest claims at Santiago's evidentiary hearing. *See* ECF No. 82-1. Counsel's omission of the claim now raised as Ground 3(A) did not constitute ineffective assistance of counsel. *Cf. Smith v. Murray*, 477 U.S. 527, 536, (1986) (noting that the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy" (internal quotation omitted)). Consequently, Santiago has not shown that the procedural default of Ground 3(A) should be excused under *Martinez*.

### F.    Ground 3(B-C)

In Ground 3(B), Santiago alleges that was he provided ineffective assistance of counsel because his counsel failed to correct the supplemental PSI before sentencing. ECF No. 27 at 52-59. He alleges that the offense synopsis in the 2013 supplemental PSI (ECF No. 60-3), which was identical to the one in the 2011 PSI (ECF No. 60-1), overstated the strength of the DNA evidence and contained several pieces of misleading or incorrect information. As to the latter, he cites a statement that he had "fled the scene after learning of the allegations," an explanation about K.S.'s reason for being in Montevista that omitted the seriousness of her behavioral problems, and an implication that he was found to have chocolate on his shirt after the alleged incident. He further claims that the PSI "did not include KS's recantation, details of KS's extensive history of manipulation and false allegations, KS's prior threats to make a false report against Santiago, or information showing that her claim that she saw Santiago washing himself through the door hinge was not possible." ECF No. 91 at 47-48.

In Ground 3(C), Santiago alleges that he was he provided ineffective assistance of counsel because his counsel failed to correct the psychosexual evaluation. *Id*. at 59-62. He notes

25

that much of the incorrect or misleading information contained in the PSI was also in the

psychosexual evaluation.  In addition, he notes that the evaluation says that he denied having any

interactions with K.S. on the day of the incident when, in fact, he had mentioned several

interactions with her when he gave his voluntary statement to the police.  Santiago contends that,

"had counsel corrected the inaccurate and misleading information and ensured that the [PSI and

psychosexual evaluation] provided a complete picture of the circumstances, it's likely the court

would have followed the agreed upon sentence and given Santiago probation." ECF No. 91 at 50.

The Nevada Court of Appeals considered the allegations supporting these two grounds

together and decided as follows:

> Santiago argued his counsel was ineffective for failing to correct the
> presentence investigation report (PSI) and the psychosexual examination report.
> Santiago asserted those reports improperly made it appear as if there was
> overwhelming evidence of Santiago's guilt, which resulted in a lengthier sentence
> than was warranted.  Santiago failed to demonstrate his counsel's performance
> was deficient or resulting prejudice.  During the sentencing hearing, the district
> court acknowledged that the PSI made it appear as if there was significant
> evidence of Santiago's guilt.  However, the State then informed the district court
> that it had entered into the plea deal because it had concerns the evidence
> produced at trial would not have been as strong as the PSI made it appear to be.
> Given the State's acknowledgment regarding the PSI and the evidence that could
> be produced at trial, Santiago failed to demonstrate it was objectively
> unreasonable for counsel to decline to reiterate this information.  And because the
> district court was informed by the State of issues involving the strength of the
> evidence against Santiago, Santiago failed to demonstrate a reasonable probability
> of a different outcome had counsel made similar arguments.  Therefore, the
> district court did not err in denying this claim without conducting an evidentiary
> hearing.

ECF No. 12-14 at 8.

Santiago argues that this decision was unreasonable because specific corrections to the

PSI and psychosexual evaluation highlighting K.S.'s credibility problems and the suspect nature

of her allegations would have had greater impact than the State's mere concession that its case

against Santiago was weaker than the PSI made it appear.  I disagree.  The transcript of the

sentencing hearing indicates that, for Judge Delaney, the fact that Santiago had entered a guilty

plea supplanted any concerns about the strength of the State's case. *See* ECF No. 36-2 at 5-8.  It

also shows that the judge focused on the finding that Santiago was a moderate risk to reoffend

and K.S.'s victim impact statement when she imposed the maximum sentence. *Id*.  I am not convinced that there is a reasonable likelihood that the judge would have followed the guilty plea agreement or imposed a lighter sentence if Draskovich had pointed out inaccuracies in the PSI and psychosexual evaluation.  Accordingly, I defer to the state court decision denying relief because it was not contrary to, or an unreasonable application of, clearly established federal law.  Nor was it based on an unreasonable determination of the facts in light of the evidence presented in state court.

**VI.    CONCLUSION**

I conclude that Santiago was provided ineffective assistance of counsel, under *Strickland*, when counsel assured him that he would be able to withdraw his guilty plea if the trial court did not accept the parties' stipulated sentence of probation.  I further conclude that the Nevada Court of Appeals' denial of relief on this ground was based on an unreasonable application of the *Strickland/Hill* standard.  Therefore, I will grant a conditional writ of habeas corpus that orders Santiago's release unless the State elects to retry him within the time period set forth below. *See Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008) (explaining that the "modern practice" is for habeas courts issue "a conditional order of release in appropriate circumstances, which orders the State to release the petitioner unless the State takes some remedial action, such as to retry (or resentence) the petitioner").  All grounds for relief in Santiago's petition other than Ground 2(C) are denied.

*Certificate of Appealability*

Under Rule 11 of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to a habeas petitioner.  A habeas petitioner who obtains relief in the district court does not need take a cross appeal or obtain a COA to defend the district court's judgment based on any ground he pursued in support of that judgment, so long as petitioner does not seek greater relief under the judgment via that ground, even if the alternative ground pursued may involve an attack on the district court's reasoning. *Jennings v. Stephens*, 574 U.S. 271, 276-83 (2015).  In the event Santiago

decides to initiate an appeal or cross-appeal, notwithstanding the *Jennings* holding, I have *sua sponte* evaluated the claims within his petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed my determinations and rulings in adjudicating Santiago's petition, I decline to issue a certificate of appealability for my resolution of any procedural issues or my denial of any of his habeas claims on the merits.

I THEREFORE ORDER that Santiago's second amended petition for a writ of habeas corpus **(ECF No. 27) is conditionally GRANTED on Ground 2(C)**. The state court's judgment of conviction of Santiago in Case No. C240905 in the Eighth Judicial District Court of Nevada is vacated. Santiago is ordered released from custody within **30 days** of the later of (1) the conclusion of any proceedings seeking appellate or certiorari review of this court's judgment, if affirmed, or (2) the expiration of time for seeking such appeal or review, unless the State files a written election in this matter within the 30-day period to retry Santiago and thereafter commences jury selection in the retrial within 120 days, subject to reasonable request for modification of the time periods in the judgment by either party under Rules 59 and 60.

I FURTHER ORDER that all grounds for relief other than Ground 2(C) and a certificate of appealability are DENIED.

I FURTHER ORDER the Clerk of Court to (1) enter judgment accordingly, (2) provide a copy of this order and the judgment to the Clerk of Nevada's Eighth Judicial District Court, referencing that court's Case No. C240905, and (3) close this case.

Dated: December 1, 2024.

_____

Chief U.S. District Judge Andrew P. Gordon